IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

FILED

December 7, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,

     Appellee,

Vs.

Obion circuit No. 7-838
C.A. No. 02A01-9811-CC-00307

LORENZO PFEIFER,

     Appellant.

_____

FROM THE OBION COUNTY CIRCUIT COURT
THE HONORABLE WILLIAM B. ACREE, JR., JUDGE

John Knox Walkup, Attorney General and Reporter
Elizabeth T. Ryan, Assistant Attorney General
For Appellee

Clifford K. McGown of Waverly
Joseph P. Atnip, District Public Defender of Dresden
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

DAVID R. FARMER, JUDGE

This appeal involves a juvenile delinquency proceeding. Appellant, Lorenzo Carlos

Pfeifer, appeals from the order of the Circuit Court in Obion County which found him a

delinquent child because he was guilty of the offense of aggravated burglary and theft of property over $1,000.00. Appellant was committed to the Tennessee Department of Children's Services for an indeterminate term. The only issue presented for review is whether the evidence is sufficient to prove beyond a reasonable doubt that Pfeifer committed the offense of aggravated burglary and theft of property over $1,000.00.

The prosecution was commenced in Juvenile Court of Obion County by petition that alleged that Lorenzo Carlos Pfeifer,

> a child within the jurisdiction of this Court and 14 years of age (DOB 08/10/83) is a(n) delinquent child . . . in need of treatment or rehabilitation, in that:
>
> On 9-11-97 between 0730 am and 1315 hrs at 1305 High St. Union City, Obion County, Tennessee the above juvenile burglarized the above residence and stole several guns, jewelry and collector coins and one collectible bill. On 9-11-97 between 1130 hrs and 1500 hrs the above juvenile was seen in possession of several of the stolen coins by a witness. Constituting the offense of aggravated burglary and theft + 1000.

*             *             *

From an adverse ruling in the Juvenile Court, Pfeifer appealed and was afforded a trial *de novo* in Circuit Court. The pertinent testimony in the Circuit Court trial is summarized as follows:

STATE'S PROOF

**Dora Richardson**, the victim, testified that her home at 1305 East High Street, Union City, Tennessee, was burglarized on September 11, 1997. She stated that she left for work at about 8:30 that morning to go to her employment and returned to her home about 1:00 or 1:30. When she returned to her home, she noted that things were not in the condition that she left them that morning, and she discovered that some rings were missing and a .25 caliber pistol had been taken out of the chest in the front bedroom. Later in the afternoon, she found that two rifles and a shotgun had been taken, and then over a period of time that afternoon discovered other things that were missing from her home. She called the Union City police, and she furnished them a list of items that she discovered were missing from her home. Included in the missing property was a silver certificate and old coins. The value of all the property was shown to be over $1,000.00. She testified that the rifles and the shotgun were subsequently returned to her by the police. On cross-examination, she testified that she did not see any one in her home and all that

2

she knew was that her home had been broken into.

**Linda King** testified that she resides at 1300 High Street, and on the morning of September 11, 1997, she was coming from the grocery store between 11:00 and 11:10 and she saw two young teenaged black men on the corner of Beck Street and High, which is very near the Richardson home. She described them as one considerably taller than the other, but she could not positively identify the defendant Pfeifer as being one of the two people.

**James R. Boyd** testified that he is a teacher in the alternative program at the Union City School System. This is a program for students that have been suspended for short or long term and is an alternative to the regular classroom. On September 11, 1997, Lorenzo Pfeifer and Steve King were assigned to the class and were due to be in school at 8:00 a.m. each day. On that particular day, they arrived together at about 11:30 and he described their condition as perspiring, agitated and quite hyper. He also stated they had straw in their hair. He noted that Mr. Pfeifer is taller than Mr. King. He further testified that within a 30 minute period after they arrived, Pfeifer, while sitting beside his desk, asked him what the value of a 1935 silver certificate would be, and Pfeifer showed him a silver certificate. He stated that he told Pfeifer that it was probably valuable as a collector's item. Pfeifer then produced three other coins, and he asked the witness about those also. One of the coins was a Lady Liberty Half Dollar, the other was a Susan B. Anthony Dollar and also a mercury-head dime. The witness stated that it was not unusual for Pfeifer to be tardy, and he did not ask him specifically why he was late. He further testified that on the next day, Officer Moran came by checking on Steve King, and the witness told Officer Moran that both King and Pfeifer came in tardy on September 11th, and he also told Officer Moran about Pfeifer showing him the coins and the silver certificate. On cross-examination, Mr. Boyd testified that he did not of his own knowledge know where the items shown to him by Pfeifer came from.

**Chucky Moran**, of the Union City Police Department, testified that he investigated the burglary of the Richardson home on September 11, 1997, and he corroborated Mr. Boyd's testimony concerning the coins and silver certificate. He testified that at the time he talked to Boyd, Ms. Richardson had not mentioned to him that those items might be missing from her home. He then contacted Ms. Richardson to check and see if there was anything like that missing from her home. After looking through her things, she described to Moran the missing

3

coins that coincided with the description he had obtained from Mr. Boyd. He also identified the guns that were taken from the Richardson home. There were no questions on cross-examination.

**Andre Everett** testified that he is seventeen years old and is the nephew of Lawrence Everett, Ms. Richardson's next-door neighbor. He identified the three guns that he stated he delivered to the Union City Police Department. He testified that he got the guns from Steve King in a place behind Eastgate in Union City. He stated that this was a day or two after the burglary that he had heard about. When he first got the guns, he hid them at Eastgate and went back and got them later and took them to his house for a day or two. Later, when his uncle came over to the house, he learned about the burglary, and he became suspicious that the guns might be stolen. He then went with his uncle and aunt to the police department to turn in the guns. On cross-examination, he testified that when he got the guns he really didn't know why he was given the guns by King. We quote from the transcript:

> Q. Here's a fifteen or sixteen-year-old boy who comes up to you with a bunch of guns like this and says, "Hey, you want these guns?" Is that what he did?
>
> A. He didn't really say nothing.
>
> Q. He didn't say nothing? He just brought 'em up and said, "Give me some money for these guns?"
>
> A. No, he didn't ask for no money.
>
> Q. Oh, he's just a kind-hearted soul. He just likes to give things away?
>
> A. No, he like --- I don't know, I guess he wanted me to hide 'em for him or something. I don't know. I don't know what he wanted.
>
> Q. So, you were receiving and concealing stolen property then that you knew was stolen, and you just took it?
>
> A. Well, I didn't know it was stolen at the time.
>
> Q. Well, you knew a fourteen, fifteen or sixteen-year-old boy doesn't own a bunch of guns like that. You were gonna hide 'em out for him, weren't you?
>
> A. I don't know what you're talking about.

**Steve King** testified that he is fifteen years old and is currently residing in Magnolia Academy, Columbia, Tennessee. He stated that he is a nephew of Phyllis Everett who lived next

door to the victim, Dora Richardson. He testified that he was tried for the September 11, 1997 burglary of the Richardson home in Juvenile Court and at that time confessed to his involvement in the burglary. He was found guilty by the Juvenile judge. In describing the burglary, he stated that he and Pfeifer entered the house through a window and took some guns. While they were in the house they were together, and Pfeifer participated in stealing things from the house. He testified that he took the guns and hid them behind a shed and later that night retrieved them and took them to Eastgate where he gave them to Andre Everett. He stated that after he and Pfeifer left the home at the time of the burglary, they both went to the school and arrived there around 11:00. They both were in Mr. Boyd's class, and he was present when Pfeifer was showing the coins to the class and Mr. Boyd. He stated that no one participated in the burglary other than him and Lorenzo Pfeifer. On cross-examination, he testified that he is a cousin of Andre Everett and conceded that Andre is taller than he is. He testified that he gave the guns to Andre and that Andre took them to his house and put them in his closet. He reaffirmed that he had put the guns behind the shed at Ms. Richardson's house immediately after the burglary and came back and got them later that night. He stated that they were under some leaves behind the shed.

DEFENDANT'S PROOF

Lorenzo Carlos Pfeifer testified that he is fourteen years of age and denied that he went into the Richardson house and took anything out of her house. He states that on that morning he was at home and that he met up with Steve King in front of the church by High Street. He admits that he had the coins that he showed to the teacher, but states that he got those coins from Steve King. On cross-examination, he testified that he didn't feel like going that morning and that he decided to go to school at about 11:15 because his mother came home and made him do so. He reiterated that he met Steve King at the Church on the corner of High Street and Taylor Street. He stated that he saw no other young black teenagers in the neighborhood other than Steve King. He was asked why King gave him the coins, and we quote from the transcript:

> Q. Why did Mr. King give you the coins?
>
> A. I guess he seen they weren't no value. He told me that he'd just got some coins, and I told him, "Let me see 'em," -- and a silver certificate. I told him, "Let me see 'em." He showed me. And he knew it wasn't no value, but I knew it was. So, then he asked me did I wanna go to the store, and I said, "For what," and he said, "We'll spend 'em." I said, "No," I said, "Let me have em. I'll give you two dollars for 'em." So, I gave him the two

5

dollars and he gave me the coins.

Q. So, you're basically saying you bought the coins from Steven
King?

A. Yes, sir.

He further testified that they were not sweaty when they arrived in Mr. Boyd's class, and that Mr. Boyd lied when he stated that they were in that condition. He further testified that Steve King said that he was with him at the burglary because he wanted to keep his cousin, Andre Everett, from getting into trouble.

**Sheena Pfeifer**, Lorenzo Pfeifer's mother, testified that on September 11, 1997, she got Lorenzo up to go to school like she normally did. She said she had to take her boyfriend to work and he had to be there at 8:00, so they all left the house at 7:45. After she took her boyfriend to work, she had some work done on her car and returned to her home around 10:00 or 10:30 and Lorenzo was in his room. She said she made him get out to go to school, and he left the house about 10:30. She didn't know how far her house at 712 Glendale was from the 1310 High Street address of Ms. Richardson. On cross-examination, she reiterated that Lorenzo first left the home around 7:45 that morning and later left the home at 10:30. She did not know where he was other than those two times. The defense rested.

Subsequently, the state was allowed to put on a witness from the school to testify that Andre Everett's record showed that he was in school all day on September 11, 1997.

ISSUE

As noted, the only issue concerns the sufficiency of the evidence. Where the sufficiency of the convicting evidence is challenged, the relevant question for the appellate court is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. T.R.A.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Cazes*, 875 S.W.2d 253 (Tenn. 1994). In determining the sufficiency of the evidence, the appellate court is not permitted to reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, the state is entitled to the strongest

legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

T.C.A. § 39-14-403 (1997) provides:

> **Aggravated burglary**. - (a) Aggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402.
> (b) Aggravated burglary is a Class C felony.

A definition of habitation includes a dwelling such as that occupied by the victim in this case. *See* T.C.A. § 39-14-401 (1)(A) (1997). A burglary is committed when one "without the effective consent of the property owner . . . [e]nters . . . with intent to commit a felony." T.C.A. § 39-14-402 (a)(1) (1997).

T.C.A. § 39-14-103 (1997) provides:

> **Theft of property.** - A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent.

If the value of the property taken is $1,000.00 or more but less than $10,000.00, it is a Class D felony. T.C.A. § 39-14-105 (3) (1997).

It is unrefuted that Ms. Richardson had property stolen from her home on September 11, 1997, and that the value of the property stolen exceeded $1,000.00. The witness testified that she saw two strange youths near the scene matching the description of Pfeifer and the other participant in the alleged crime, Steve King. At trial, the other participant, King, testified that Pfeifer entered the home and took property therefrom. Subsequently, Pfeifer arrived at school along with the co-participant, King, and both of them appeared agitated and perspiring heavily. Shortly thereafter, Pfeifer displayed to Mr. Boyd some of the property stolen from the Richardson home. The trial court found Pfeifer's explanation as to how he obtained this property somewhat suspect. When a defendant has possession of recently stolen goods and cannot provide an adequate explanation as to how he obtained the goods, an inference can be made that the defendant stole the property. *Bush v. State*, 541 S.W.2d 391, 394 (Tenn. 1976). King's testimony as an accomplice must be corroborated, and there must be some fact testified to entirely independent of the accomplice's testimony which taken by itself leads to an inference, not only that a crime has been committed, but that the accused is implicated in the crime. *Mathis v. State*, 590 S.W.2d 449, 455 (Tenn. 1979). However, the evidence corroborating the

testimony of an accomplice need not be sufficient to prove the whole case without the testimony of the accomplice. *Sherrill v. State*, 204 Tenn. 427, 435, 321 S.W.2d 811, 815 (1959). The testimony of Mr. Boyd concerning Pfeifer's possession of the property and Pfeifer's admission that he did possess the property is sufficient corroboration of King's testimony. Moreover, Pfeifer's alibi defense lacked any corroboration. His mother's testimony contradicts his testimony regarding the critical times. According to her testimony, Pfeifer left their home with ample time to commit the crime and then arrive at school as proven. The finding by the trial court that the crimes have been committed by defendant removes a presumption of innocence and replaces it with a presumption of guilt requiring that the accused have the burden in the appellate court of illustrating why the evidence is insufficient to support this finding. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The defendant has failed in this Court to meet the burden placed upon him.

Accordingly, the order of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

8