# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 26, 2000 Session

## STATE OF TENNESSEE v. ROY RAY WALLACE

### Appeal from the Circuit Court for Grainger County
#### No. 3294     O. Duane Slone, Judge

---

### No. E2000-00046-CCA-R3-CD
### December 6, 2000

---

The defendant appeals his convictions for burglary and theft of property valued at less than five hundred dollars. He challenges the sufficiency of the evidence in light of the uncorroborated testimony of an accomplice, the admissibility of a recording of his co-defendant's testimony, and the length of his sentence. We affirm the convictions and sentences.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Robert M. Burts, Rutledge, Tennessee, attorney for appellant, Roy Ray Wallace.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Alfred C. Schmutzer, Jr., District Attorney General; and Michael A. Gallegos, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Roy Ray Wallace, appeals as of right his convictions by a jury in the Grainger County Circuit Court for burglary, a Class D felony, and theft of property valued at less than five hundred dollars, a Class A misdemeanor. The defendant, a Range III offender, received concurrent sentences of twelve years and eleven months and twenty-nine days respectively. He contends that the evidence is insufficient because the testimony of an accomplice is uncorroborated, the trial court improperly admitted the tape-recorded testimony of a co-defendant, and his sentence is excessive. We affirm the judgments of conviction.

At trial, George McCoy, the owner of McCoy Meat Company, testified as follows: On August 10, 1997, around midnight, his employee, who lived across the street from the meat company, called to tell him that someone had broken into his business. The employee told him that he saw a truck in the meat company's driveway and that when he drove to the rear of the building

to investigate, he saw the perpetrators fleeing. The perpetrators had loaded ten thousand dollars worth of perishable food into buggies and left them at the rear of the building. They damaged three doors and took a pager and two hundred dollars in cash. He also identified exhibit one, a .22 caliber, bolt-action gun with a piece of the stock missing, as the gun that had been taken from his business.

Mr. McCoy testified that the perpetrators took his business checkbook and wrote eight to ten checks on his account. Mr. McCoy was the only one authorized to sign checks on this account. He identified a check written on his account, made out to Roy R. Wallace, and signed by George Culin. The memorandum portion of the check stated "week 8-11 - 8-15  36½ hours." The check had the name Roy Wallace, a driver's license number, and a phone number on the back. The check reflects that it had been cashed at a business. Mr. McCoy did not know George Culin, and neither Mr. Culin nor the defendant had ever worked for him. The defendant's relatives lived across the street from the meat company, and Mr. McCoy had seen the defendant before but had never given him permission to enter his business or take his property.

Joey Edward Cox testified as follows: On August 17, 1997, the defendant tried to sell him a rifle, which he identified as the gun marked exhibit one. He told the defendant that he did not want to buy the gun, but the defendant's brother continued showing it to him. He thought that the defendant acted suspiciously because the defendant told his brother not to be flashing the gun around. The defendant sold the gun to James Diehls for twenty-five dollars.

James Diehls testified as follows: On August 17, 1997, he saw the defendant and Joey Cox at a body shop. The defendant was putting a gun in his trunk, and Mr. Diehls, who collects guns, asked him about it. The gun, a .22 caliber rifle, was worth only twenty-five dollars because it was broken. Joey Cox offered the defendant twenty dollars for the gun, but the defendant declined that offer. Mr. Diehls bought the gun from the defendant for twenty-five dollars. He identified exhibit one as the gun that he bought from the defendant on that day.

Wayne Wallace, the defendant's brother, testified as follows: He was with his nephew, Danny Overholt; the defendant; and a boy, whom he identified only as the son of a woman named Robin, when the defendant traded something to Mr. Overholt for a Kenwood car stereo. Sometime later, he was with the defendant, Robin's son, and another boy. The defendant traded the stereo to Robin's son in exchange for a gun. Sometime afterwards, the defendant took the gun to the body shop to sell it. Mr. Wallace sat in the car and did not know how much money the defendant received for the gun. The defendant never told him not to be flashing the gun around. He identified exhibit one as the gun that the defendant got from Robin's son.

Judy Overholt, the defendant's sister, testified as follows: On April 2, 1997, she bought a car and the salesman gave her a Kenwood stereo to install in it. She sold the car to her son, who installed his Pioneer stereo and gave the Kenwood stereo to the defendant in the summer of 1997. She knew nothing about the defendant subsequently trading the stereo for a gun. Grant Runion testified that he had known the defendant all of his life and was there when the defendant traded a Sanyo car radio to a teenage boy in exchange for a gun.

The jury listened to the taped preliminary hearing testimony of Brian Durham, who implicated the defendant in the burglary and stated that the defendant had taken a gun. The trial court instructed the jury that Mr. Durham was also charged in connection with these crimes and that if he had been present, defense counsel would have questioned him about entering into a plea agreement with the state. Based upon the foregoing evidence, the jury convicted the defendant of burglary and theft of property valued at less than five hundred dollars.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his convictions because nothing corroborates the testimony of Brian Durham, who was an accomplice in the crimes. He argues that although the state proved that he sold the gun taken from the victim's business seven days after the burglary, he presented uncontradicted testimony that he had traded a stereo in exchange for the gun. He claims that the mere fact that his name appears on the stolen check does not prove that he stole, wrote, passed, endorsed or ever possessed the check. The state contends that the evidence in the record corroborates Brian Durham's testimony.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In Tennessee, a conviction may not be based upon the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). An accomplice is an individual who knowingly, voluntarily, and with common intent participates with the principal offender in the commission of an offense. State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). In the present case, the trial court instructed the jury that Brian Durham was an accomplice and that his testimony must be corroborated. Whether other evidence sufficiently corroborates the testimony of an accomplice is a question of fact entrusted to the jury. Bigbee, 885 S.W.2d at 803. The general rule is that:

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration

> need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Hawkins v. State, 4 Tenn. Crim. App. 121, 133-34, 469 S.W.2d 515, 520 (1971).

The evidence sufficiently corroborates Mr. Durham's testimony linking the defendant to the burglary and theft of the gun from the meat company. James Dielhs testified that the defendant sold him a broken .22 caliber rifle on August 17, 1997. Joey Cox testified that the defendant had offered to sell him a gun on August 17, 1997, and then sold it to Mr. Diehls. Both men identified the gun taken from the meat company as the one in the defendant's possession that day. Absent a satisfactory explanation, the possession of recently stolen property creates the inference that the individual in possession stole the property. Bush v. State, 541 S.W.2d 391, 394 (Tenn. 1976); State v. Pfeifer, 993 S.W.2d 47, 52 (Tenn. Crim. App. 1998). The defendant's possession of the stolen gun seven days after the burglary is corroborative of Mr. Durham's testimony.

The defendant contends that three uncontradicted witnesses testified that he traded a stereo to a teenage boy in exchange for the gun. The defendant's explanation of his or her possession of recently stolen property does not destroy the inference that it is stolen, but, instead, presents a question for the jury regarding the weight to give the evidence. Bush, 541 S.W.2d at 395. While two witnesses, Wayne Wallace and Grant Runion, testified that the defendant traded a stereo for a gun, only Mr. Wallace identified the gun taken from the meat company as the weapon received by the defendant in the trade. Judy Overholt testified that she knew nothing about the defendant trading the stereo for a gun. Mr. Cox's testimony that the defendant acted suspiciously regarding the gun by telling his brother not to flash the gun around contradicts the defendant's evidence that he gained the gun through legitimate means. The question of whether the defendant received the gun from an unnamed teenager goes to the weight and credibility of the evidence, matters reserved for the jury rather than this court. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The defendant also contends that the fact that the stolen check bore his name does not corroborate Mr. Durham's testimony that he was involved in the burglary because the state did not prove that he stole, wrote, passed, endorsed or possessed the check. The corroborative evidence does not have to prove conclusively that the defendant committed the crime but must simply connect the defendant with the crime. Hawkins, 4 Tenn. Crim. App. at 133-34, 469 S.W.2d at 520. The corroborative evidence standing alone may be entitled to little weight. Id. Mr. McCoy, the owner of the meat company, testified that his business checkbook was stolen in the burglary, that he was the only one authorized to write checks on the business account, and that the defendant had never worked for him. He identified one of his checks, which was payable to Roy R. Wallace and bore the signature "Roy Wallace" as the endorsement. The check was dated August 15, 1997, and the memorandum notation indicated that the check was for thirty-six and one-half hours of work performed on August 11-15, 1997. The stolen check listing the defendant as the recipient purportedly in exchange for thirty-six and one half hours of labor despite the fact that he never worked for Mr. McCoy connects the defendant with the burglary of the meat company.

-4-

Viewing the evidence in the light most favorable to the state, Mr. Durham testified that the defendant broke into the meat company and took a gun. The defendant sold the stolen gun seven days following the burglary. The evidence is sufficient to support the convictions for burglary and theft of property valued at less than five hundred dollars.

## II. ADMISSIBILITY OF RECORDED TESTIMONY

The defendant contends that the audiotape recording of the preliminary hearing testimony of Brian Durham is inadmissible because it violates his Sixth Amendment right to confrontation. He argues that Mr. Durham, who was the key witness linking him to the burglary, repeatedly contradicted himself, could not recall some information, and was motivated to lie because of his plea agreement with the state. He maintains that the record is devoid of proof of the state's effort to bring Mr. Durham into court. He also argues that the trial court should not have admitted the recorded testimony because portions of the recording are inaudible. The state contends that the defendant has waived this issue for failing to include it in his motion for a new trial. It also argues that the defendant failed to question the unavailability of Mr. Durham at trial and that the trial court determined that Mr. Durham was unavailable.

The failure to include a challenge to the admissibility of evidence in the motion for a new trial serves to waive appellate review of the issue. T.R.A.P. 3(e). When necessary to do substantial justice, this court may review an error omitted from the motion for a new trial but affecting the substantial rights of the defendant. Tenn. R. Crim. P. 52(b). In order for the state to introduce the former testimony of an unavailable witness without violating the defendant's right to confrontation, the state must prove that the witness is "truly unavailable" despite the state's good faith effort to secure the witness's presence at trial and that the evidence bears its own indicia of reliability. State v. Arnold, 719 S.W.2d 543, 548 (Tenn. Crim. App. 1986). We are unable to determine if the state has conformed to these requirements in this case because the defendant has failed to provide a complete record on appeal.

Before trial, defense counsel moved to exclude the audiotaped testimony of Mr. Durham, contending that, as he had told the court earlier, the audiotape was inaudible and that it violated the defendant's right to confront and cross-examine this witness. Without asking for the state's response, the trial court overruled the defendant's motion, stating

> the Court finds that Mr. Durham had unequivocally entered into an agreement with the State of Tennessee to testify against Mr. Roy Ray Wallace. However, he's not here, a capias has been issued for his arrest. He's obviously unavailable as a witness in this matter and he did testify at the Preliminary Hearing of this matter and was subject to cross-examination at that time.

These statements along with defense counsel's reference to what he previously told the court indicate the existence of earlier discussions regarding Mr. Durham's availability that are not a part of the record. The appealing party has a "duty to prepare a record which conveys a fair, accurate and

complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). In the absence of a complete record, we must presume the trial court correctly found that Mr. Durham was truly unavailable. See State v. Boling, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992) ("Absent an essential part of the record, this court must presume that the trial court's determination is correct.").

The defendant argues that the trial court should not have admitted the audiotape into evidence because portions were inaudible. However, the defendant has provided an incomplete record on this issue because he has not preserved the recording as it was heard by the jury.[1] In any event, our review of the recording reveals that while portions of Mr. Durham's testimony are unintelligible, the testimony still implicates the defendant in the burglary and the theft of the gun. We further note that the defendant's trial counsel conducted a thorough cross-examination of Mr. Durham, pointing out a number of inconsistencies in his testimony. The trial court listened to the audiotape before trial and ruled that it was sufficiently audible to be heard by the jury. The defendant's trial attorney stipulated to the authenticity of the audiotape. "Provided that a tape recording is properly authenticated, the incompleteness of it goes only to its weight and not to its admissibility." State v. Harris, 637 S.W.2d 896, 898 (Tenn. Crim. App. 1982); see also State v. Beasley, 699 S.W.2d 565, 569 (Tenn. Crim. App. 1985); Aldridge v. State, 562 S.W.2d 216, 218 (Tenn. Crim. App. 1977). The trial court properly admitted the recorded testimony of Brian Durham.

### III. SENTENCING

The defendant summarily contends that his sentence is excessive because he committed property crimes rather than crimes against people, broke into a business rather than a home, and repaid the store that cashed the forged check before he was charged with these offenses. He also argues that his conduct neither caused nor threatened serious bodily injury and that he has a history of bad nerves and diminished mental capacity. The state contends that the trial court properly sentenced the defendant.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. The defendant's argument as stated above is essentially all the defendant presents on this issue. As noted by the state, the failure to provide argument and citation to

---

[1] Apparently, Mr. Durham's preliminary hearing testimony was recorded at a decreased speed. The defendant's brief does not refer to the content of the audiotape and states that appellate counsel "tried to listen to the tape and was unable to hear anything." We note that the defendant has a different attorney on appeal but this fact does not relieve him of his burden to provide a complete record for our review. See Ballard, 855 S.W.2d at 560. In order to learn the substance of Mr. Durham's testimony, the court listened to the original tape on a variety of tape recorders with variable speed functions and determined that Mr. Durham's testimony was apparently recorded at one-half standard recording speed. During this process, the author inadvertently lost thirteen seconds of the direct examination of Mr. Durham contained on the original tape. The remaining direct testimony still implicates the defendant in the burglary and theft of the gun. We do not believe that the loss of this portion of the tape is to either party's detriment.

authorities will result in waiver of the issue. Tenn. Ct. Crim. App. R. 10(b). The defendant's brief assertion of circumstances that he apparently believes the trial court should have used to mitigate his sentence is worthy of such waiver.

In any event, our de novo review of the record reveals that the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the relevant sentencing factors and principles. The trial court found and attached great weight to enhancement factor (1) because the defendant had criminal convictions in excess of those necessary for his Range III status. See Tenn. Code Ann. § 40-35-114(1). The presentence report reflects that the defendant had twenty convictions for felonies and misdemeanors in excess of the six convictions necessary to establish his sentencing range. The trial court also enhanced the defendant's sentence with factor (13)(A), finding that the defendant committed the present felony of burglary while on bail for another felony of which he was ultimately convicted. See Tenn. Code Ann. § 40-35-114(13)(A). The trial court applied mitigating factor (1), finding that the defendant's conduct did not cause or threaten serious bodily injury. See Tenn. Code Ann.§ 40-35-113(1). It found no other mitigating factors to apply, determined that the defendant's lengthy criminal record greatly outweighed any mitigation, and sentenced the defendant to the maximum sentence of twelve years for his burglary conviction.

The defendant contends that the trial court should have considered that his conduct did not cause or threaten serious bodily injury. The record reflects that the trial court mitigated the defendant's sentence with this factor but found it to be outweighed by the defendant's criminal record. To the extent that the defendant is arguing that the trial court did not properly weigh these factors, we observe that the weight accorded sentencing factors is left to the trial court's sound discretion. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments. The trial court properly applied these factors.

The defendant also contends that the trial court should have considered his mental history of a nervous condition and diminished mental capacity. At the sentencing hearing, the defendant's sister, Judy Overholt, testified that as a child, the defendant experienced nervousness, hyperactivity, and problems concentrating. She stated that while in school, the defendant took medication for this condition but that the medication made him sleepy and that he slept through most of his classes, and he could not read or write. She said that although the defendant needed to be on medication for the rest of his life, he stopped taking the medication as a teenager and started getting into trouble. The trial court considered the defendant's mental condition in relation to mitigating factor (8), the "defendant was suffering from a mental condition or physical condition that significantly reduced the defendant's culpability for the offense." Tenn. Code Ann. § 40-35-113(8). While recognizing that the defendant did have a condition that made him nervous, the court rejected factor (8), finding that the defendant had sufficient mental faculties to know the type of conduct in which he engaged. The record does not preponderate against this finding.

The defendant contends that the trial court should have considered that these crimes were property crimes rather than crimes against people and that he broke into a business rather than a

home. The trial court did consider the fact that the offenses posed no threat of injury to others in applying mitigating factor (1). Furthermore, the legislature has provided a lesser penalty for the burglary of a business, which is a Class D felony, than that for the burglary of a habitation, which constitutes aggravated burglary and is a Class C felony. The defendant was convicted of the former and, thus, has received a lesser penalty based upon the location of the crime.

Finally, the defendant contends that the trial court should have considered that he repaid the store where he cashed the forged check before he was charged with these offenses. At the sentencing hearing, the defendant denied committing the offenses and explained the presence of his name on the forged check by relating that he sold some tires to a woman, who wrote him a check. He said that he would not have endorsed the check, written his social security number on it, or cashed it if he had known that it was stolen. His attorney reminded the court that the defendant could not read or write. The defendant stated that a Union County detective talked to him about the check. He said that after speaking with the detective, he repaid the store in Union County at which he cashed the check. He stated that about one week later, he went to court in Union County and was brought to Grainger County for the burglary of the meat company.

A trial court may mitigate the defendant's sentence if before "detection, the defendant compensated or made a good faith attempt to compensate the victim of criminal conduct for the damage or injury the victim sustained." Tenn. Code Ann. § 40-35-113(5). Although the defendant claims to have repaid the store before being charged with the burglary of the meat company, it does not appear that he repaid the store before the police became involved in the matter of the forged checks. Mitigating factor (5) does not apply because the defendant did not compensate the victim before detection. On the other hand, a defendant's repayment of the check after detection may be considered under the catchall provision of mitigating factor (13). See State v. Mary McNabb, No. 03C01-9404-CR-00135, Sullivan County, slip op. at 6 (Tenn. Crim. App. Feb. 8, 1995). Even considering that the defendant repaid the store at which he passed the stolen check, this factor is entitled to little weight in light of his extensive criminal record. We affirm the sentences of twelve years for the burglary and eleven months and twenty-nine days for misdemeanor theft.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction.

_____
JOSEPH M. TIPTON, JUDGE

-8-