IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2017 Session

IN RE A'REEYON L.

Appeal from the Criminal Court for Hamilton County
No. 299908   Tom Greenholtz, Judge

_____

No. E2017-00261-COA-R3-JV

_____

This appeal arises out of a delinquency proceeding in Hamilton County Juvenile Court ("juvenile court").  The juvenile was accused of violating his probation by failing to report to his probation officer as required by the rules of his probation.  Following a hearing and ruling by the juvenile court, the matter was appealed to the Hamilton County Criminal Court ("trial court").  Upon a bench trial and *de novo* review, the trial court found that the juvenile had violated his probation by failing to report to his probation officer.  The trial court subsequently ordered that the juvenile be committed to the custody of the Department of Children's Services ("DCS") pursuant to Tennessee Code Annotated § 37-1-131(a)(4).  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

David C. Veazey, Chattanooga, Tennessee, for the appellant, A'reeyon L.

Herbert H. Slatery, III, Attorney General and Reporter, and Nicholas W. Spangler, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Factual and Procedural Background

On March 28, 2016, A'reeyon L. ("the Juvenile") pled guilty in the juvenile court to charges of violating aftercare, being an unruly child, and truancy.  The juvenile court dismissed a charge of aggravated assault at that time.  The matter was scheduled for a

subsequent dispositional hearing to occur on May 25, 2016. Prior to the dispositional hearing, the Juvenile accrued new charges. On April 25, 2016, the Juvenile pled guilty to additional charges of unlawful possession of a firearm and evading arrest. The juvenile court scheduled a cumulative dispositional hearing to address all delinquency charges to which the Juvenile had pled guilty. It is undisputed that the juvenile court placed the Juvenile on probation through the Serious Habitual Offender Community Action Program ("SHOCAP") on August 31, 2016, based on the delinquency adjudications.[1] The record contains no indication that the Juvenile appealed the dispositional hearing order placing him on probation.

On September 8, 2016, Teneka Arnette, the Juvenile's probation officer, reported to the juvenile court that the Juvenile had violated the conditions of his probation. Following a hearing, the juvenile court determined that the Juvenile had violated his probation. Consequently, the juvenile court entered an order on September 21, 2016, committing the Juvenile to the custody of DCS. The Juvenile subsequently appealed the ruling of the juvenile court to the trial court. The trial court conducted a *de novo* bench trial on January 11, 2017.

During the trial, Ms. Arnette testified to the purpose and requirements of the SHOCAP probation program. According to Ms. Arnette, SHOCAP probation is a more intensive form of probation designed for juveniles who have serious charges or are habitual offenders. At the time of the hearing, the program had only been in place for approximately seven or eight months. Ms. Arnette explained that SHOCAP is designed so that the juvenile probationer will "cooperate and work with [his or her] probation officer to develop the self-discipline necessary to remain out of trouble in the future and work to resolve the personal problems which may have contributed to [him or her] being placed on probation."

In addition to several other requirements, SHOCAP required the Juvenile to remain on house arrest for a period of thirty to forty-five days, during which he could only travel to and from his home and his school or place of employment. The period of house-arrest could have been extended depending on the Juvenile's compliance with the program. According to Ms. Arnette, during the house-arrest phase, the Juvenile was to remain within his home with parental supervision and maintain contact with the probation officer, "calling in for a minimum of twice a day." During these telephone calls, his

---

[1] The record reflects that the Juvenile was charged with disorderly conduct on April 29, 2016. The record on appeal does not include adjudicatory or dispositional orders regarding the disorderly conduct charge. In his brief, however, the Juvenile states that "[h]e was adjudicated for a number of offenses, including unlawful possession of a firearm, evading arrest, disorderly conduct, violation of ([DCS]) aftercare, as well as unruly and truancy offenses." The probation paperwork also states that disorderly conduct was a charge that placed the Juvenile on probation.

parent was required to verify the Juvenile's compliance with the house arrest requirement. The Juvenile was also required to visit the probation officer's office twice per month, accompanied by his parent. Ms. Arnette explained that following the juvenile's compliance with the house-arrest phase, later stages of the program would have been comprised of relaxed rules, including later curfews and less frequent reporting requirements.

Ms. Arnette testified that the Juvenile began SHOCAP on August 31, 2016, and was in the house-arrest phase of the program when he violated his probation. When meeting with the Juvenile and his mother after court on August 31, 2016, Ms. Arnette and another probation officer explained the rules of the probation program. Both the mother and the Juvenile signed a copy of the conditions of SHOCAP, including a detailed description of the reporting requirements. According to Ms. Arnette, the Juvenile called her to "check-in" on the day of court when they returned home, and the mother verified that they were home. During the following two days, Ms. Arnette did not have contact with the Juvenile or his mother.

Ms. Arnette contacted the Juvenile's mother on September 2, 2016, and inquired as to why the Juvenile had not contacted her per the reporting requirement. The mother informed Ms. Arnette that she had forgotten and that the Juvenile had not mentioned to her the reporting requirement. When Ms. Arnette spoke to the Juvenile during that telephone call, the Juvenile informed her that he understood the requirements of SHOCAP. Also during the telephone call, Ms. Arnette instructed the Juvenile to contact her twice a day per the probation requirements. According to Ms. Arnette, although the Juvenile contacted her that day, following the telephone call, Ms. Arnette did not have any further contact with the mother or the Juvenile. The mother did contact Ms. Arnette, leaving a voice mail on September 6, 2016, to inform Ms. Arnette that the Juvenile had completed additional requirements of the program. However, according to Ms. Arnette, the Juvenile had not contacted Ms. Arnette to satisfy the reporting requirement since September 2, 2016. Ms. Arnette testified that she subsequently filed the violation of SHOCAP probation on September 8, 2016, due to "noncontact."[2]

Following the *de novo* hearing conducted on January 11, 2017, the trial court found by a preponderance of the evidence that the Juvenile had violated the reporting requirement concerning his SHOCAP probation. The court ordered that the Juvenile be committed to DCS custody. The Juvenile timely appealed to this Court.

---

[2] The petition alleging that the Juvenile had violated his probation was not contained within the record on appeal. Neither party disputes that Ms. Arnette filed a petition to violate the Juvenile's probation on September 8, 2016.

## II. Issue Presented

The Juvenile raises one issue on appeal, which we have restated as follows:

Whether the trial court erred by declining to address whether SHOCAP complies with Tennessee Code Annotated § 37-1-102(b)(19) as a rehabilitative probation program, and instead finding the Juvenile in violation of probation and ordering that he be committed to DCS custody.

## III. Standard of Review

We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Pursuant to Tennessee Code Annotated § 37-1-102(11) (2017), a "delinquent child" is "a child who has committed a delinquent act and is in need of treatment or rehabilitation." A "delinquent act" is defined as an act by a juvenile that has been designated as a crime under the law. Tenn. Code Ann. § 37-1-102(10). As this Court has previously explained regarding delinquency adjudications:

> The review of the trial court's finding of delinquency is accorded the same dignity as a jury verdict in a criminal trial. *State v. Farrar,* 355 S.W.3d 582, 585 (Tenn. Ct. App. 2011) (quoting *State v. Holder,* 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999)). Accordingly, we do not reweigh or reevaluate the evidence. *State v. Pfeifer,* 993 S.W.2d 47, 51 (Tenn. Crim. App. 1998). When the sufficiency of the evidence is challenged, our standard of review is "whether, after reviewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Rogers,* 188 S.W.3d 593, 616 (Tenn. 2006); *see also* Tenn. R. App. P. 13(e).

*State v. Lyon*, No. M2012-00357-COA-R3-JV, 2013 WL 285732, at *2 (Tenn. Ct. App. Jan. 24, 2013). Although a delinquent act by a juvenile must be proven beyond a reasonable doubt, Tenn. R. Juv. P. 210(e), a probation violation judgment need only be

supported by a preponderance of the evidence, Tenn. R. Juv. P. 212(b). *See Lyon*, 2013 WL 285732, at *2.

A trial court's finding that a juvenile has violated probation is reviewed under an abuse of discretion standard. *See State v. Farrar*, 355 S.W.3d 582, 585-86 (Tenn. Crim. App. 2011). For this Court to determine that an abuse of discretion exists, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554-55 (Tenn. 2001) (citing *State v. Harkins,* 811 S.W.2d 79, 82 (Tenn. 1991)). To demonstrate an abuse of discretion by a trial court regarding a violation of probation, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *See State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991).

## IV. Violation of Probation

Although the Juvenile contends that the entire SHOCAP program is not in compliance with the definition of "probation" included in Tennessee Code Annotated § 37-1-102(b)(19), the dispositive issue in this matter is whether the trial court erred by finding that the Juvenile violated his probation for failing to report to his probation officer and subsequently committing the Juvenile to the custody of DCS. We agree with the trial court that the reporting requirement of SHOCAP is not inconsistent with the definition of probation contained in Tennessee Code Annotated §37-1-102(b)(19). We further conclude that the trial court did not err by finding that the Juvenile violated his probation and ordering that the Juvenile be committed to DCS custody pursuant to Tennessee Code Annotated § 37-1-131(a)(4).

Tennessee Code Annotated § 37-1-131 (2017) provides in relevant part:

(a) If the child is found to be a delinquent child, the court may make any of the following orders of disposition best suited to the child's treatment, rehabilitation and welfare:

(1)     Any order authorized by § 37-1-130 for the disposition of a dependent or neglected child;

(2)(A) Placing the child on probation under the supervision of the probation officer of the court or the department of children's services, any person, or persons or agencies designated by the court, or the court of another state as provided in § 37-1-143, under conditions and limitations the court prescribes. If in a subsequent proceeding, the court finds the child has violated

any of the conditions or limitations of probation, the court may make any disposition which would have been permissible in the original proceeding;

\* \* \*

(4)     Subject to the restrictions of § 37-1-129(c), commit the child to the department of children's services, which commitment shall not extend past the child's nineteenth birthday;

The term "probation" is defined within Tennessee Code Annotated § 37-1-102(b)(19) (2017) as follows: "'Probation' means casework service as directed by the court, as a measure for the protection, guidance and well-being of the child and such child's family. Probation methods shall be directed to the discovery and correction of the basic causes of maladjustment." A violation of probation proceeding shall be conducted in the same manner as delinquency proceedings, and a juvenile's violation of probation shall be proven by a preponderance of the evidence. Tenn. R. Juv. Pro. 212. Upon a finding that a juvenile has violated his or her probation, the trial court may make any determination regarding disposition that would have been permitted in the original delinquency proceeding. Tenn. Code Ann. § 37-1-131(a)(2)(A).

The SHOCAP program is an intensive, supervised probation program for juveniles who have been convicted of serious crimes or have been deemed to be habitual offenders. The document entitled, "SHOCAP . . . Conditions of Release," which the Juvenile and his mother had also signed, identifies the purpose of the program, stating: "This is a program whereby you cooperate and work with your probation officer to develop the self-discipline necessary to remain out of trouble in the future and work to resolve the personal problems which may have contributed to your being placed on probation." Among several program requirements, the Juvenile was required to report to his probation officer with his parent present twice per day via telephone to ensure compliance with the house arrest aspects of the program. The Juvenile and his mother agreed to the terms of the SHOCAP probation, including this reporting requirement. Their agreement was demonstrated by both the Juvenile's and the mother's signature on a document explaining the SHOCAP reporting requirements. That document reads: "House Arrest: [Serious Habitual Offenders] must call in twice (2x) per day (morning and evening). The parent must verify the child's compliance with the expectations of house arrest."

The trial court recognized that the Juvenile's attorney had presented "strong arguments that certain conditions of SHOCAP, other than the reporting requirement, may be inconsistent with the definition of 'Probation' in Tenn. Code Ann. § 37-1-102[(b)](19), specifically that '[p]robation methods shall be directed to the discovery and

correction of the basic causes of maladjustment.'" The trial court, however, determined that the reporting requirement of SHOCAP, which was the requirement the Juvenile had violated, was not "inconsistent with 'the discovery and correction of the basic causes of maladjustment.'" *See* Tenn. Code Ann. § 37-1-102(b)(19). The trial court further found that the Juvenile had violated the reporting requirement of his probation "by refusing to contact his probation officer, twice a day, from the period between August 31, 2016 and September 9, 2016, the date on which the probation violation was issued."

The Juvenile requests that this Court determine whether the entire SHOCAP complies with Tennessee Code Annotated § 37-1-102(b)(19). However, that analysis is not necessary in the present case. *See, e.g., State v. Burdin*, 924 S.W.2d 82, 87 (Tenn. 1996) (determining that a probation condition was not authorized by statute without invalidating the defendant's sentence of probation.). The Juvenile's probation was violated solely due to his failure to report to his probation officer as required by the conditions of his probation. Although we recognize that the reporting requirement in the SHOCAP is strict, as it is an intensive program for serious or habitual offenders, we agree with the trial court that the reporting requirement is among the most basic requirements of any supervised probation program and that it was unnecessary in this case to address whether SHOCAP probation was in compliance with the statutory definition of probation. Therefore, we determine that the reporting requirement of SHOCAP is compliant with the definition of probation included in Tennessee Code Annotated § 37-1-102(b)(19) and is an appropriate condition of probation.

The evidence presented supports the trial court's finding that the Juvenile consistently failed to report to his probation officer twice daily via telephone as required by the conditions of his probation. During the time the Juvenile was on probation, he contacted his probation officer only once on the day he began probation and once more on the day Ms. Arnette reminded the Juvenile of the reporting requirements. The trial court further found that the violations by the Juvenile were "intentional and deliberate, with the purpose of avoiding or circumventing the supervision required by the terms and conditions of probation."

Upon a thorough review of the record, we conclude that the evidence supports the trial court's finding by a preponderance of the evidence that the Juvenile violated his SHOCAP probation by failing to report to his probation officer. Therefore, we determine that the trial court did not abuse its discretion in finding that the Juvenile violated his probation by failing to report to his probation officer as required by the conditions of his probation. Because commitment to DCS custody is a disposition which would have been permitted in the original delinquency proceeding, we determine that the trial court did not err when it ordered that the Juvenile be committed to DCS custody pursuant to Tennessee Code Annotated § 37-1-131(a)(4). *See* Tenn. Code Ann. §37-1-131(a)(2)(A).

### V. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. This case is remanded to the trial court for collection of costs below. Because the appellant is a juvenile, costs of this appeal are assessed against the State of Tennessee.

_____
THOMAS R. FRIERSON, II, JUDGE