**STATE of Tennessee, Appellee,**

v.

**Tommy HARRIS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

May 17, 1982.

W. Zane Daniel, Knoxville, Jerry Cunningham, Maryville, for appellant.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, David Ballard, Dist. Atty. Gen., Steven R. Hawkins, Asst. Dist. Atty. Gen., Maryville, for appellee.

## OPINION

DUNCAN, Judge.

The appellant-defendant, Tommy Harris, was convicted of two (2) counts of the sale and delivery of cocaine, a Schedule II controlled substance. He received a penitentiary sentence of not less than four (4) years nor more than four (4) years on each count, the sentences to be served concurrently. He also was fined five hundred dollars ($500.00) on each count.

In this appeal the defendant claims that a tape recording should have been excluded from the evidence, contends that the trial court erred in failing to give certain instructions to the jury, asserts that cocaine is improperly classified as a Schedule II controlled substance, and says that the trial court erred in denying his attorney permission to interview the jurors after the trial. We find no merit to these contentions.

The defendant has not challenged the sufficiency of the evidence, but in order to place some of his complaints in proper perspective, we will summarize some of the evidence.

Larry Johnson, an undercover narcotics officer, working in Blount County, made arrangements with Detective Randy Kidd and a Ms. Kathy Hill to attempt to buy drugs from the defendant. Ms. Hill contacted the defendant, and as a result of this contact, Officer Johnson, Ms. Hill and the defendant met in an apartment in Blount County on February 11, 1981, and Johnson purchased a quarter ounce of cocaine from the defendant at a price of five hundred twenty-five dollars ($525). The next day, February 12, 1981, Officer Johnson met with the defendant at the defendant's beauty salon, and there purchased another quarter ounce of cocaine from the defendant for five hundred twenty-five dollars ($525). On this occasion Officer Johnson was "wired for sound" and Detective Kidd recorded the conversation between the defendant and Johnson.

The defendant admitted that the transaction took place but relied on the defense of entrapment. He maintained that Ms. Hill had been threatened by the police into "setting him up." He claimed that Ms. Hill had harrassed him on several occasions about obtaining cocaine for her, and that he participated in these transactions to aid her in getting this drug. The defendant said he was acting merely as a middleman between Ms. Hill, Johnson, and one Steve Ellis. He said Ellis delivered cocaine to the apartment on February 11, 1981, and to the beauty salon the next day. On each occasion, Ellis left the cocaine, Johnson would appear and pay for it, and Ellis would reappear later and pick up the money. We note that Ellis was not subpoenaed to testify.

Ms. Kathy Hill testified for the defense, claiming to have been threatened and coerced by the police into helping them make a case against the defendant. Officer Johnson denied any knowledge of any police pressure upon Ms. Hill, but testified that after the transactions had occurred, the police had received reports of threats made by the defendant toward Ms. Hill.

Regardless of Ms. Hill's motivation for her participation in this affair, the State's evidence, as well as the defendant's own testimony, establishes his guilt beyond question. The jury properly rejected the defendant's attempt to cast an innocent light on his participation in these sales. The evidence is overwhelming to show the defendant's guilt beyond a reasonable doubt, and it is obvious from the record that except for the excellent representation

afforded him by his counsel, the jury would likely have dealt with him more harshly.

In his first issue, the defendant attacks, both on procedural and substantive grounds, the admissibility of the tape recording of the February 12 drug transaction.

■ The trial court allowed the tape recording to be filed as an exhibit for identification only. After hearing argument on its admissibility, and after hearing testimony from Detective Kidd regarding its authenticity, the trial court allowed the tape to be played to the jury. The defendant now argues that since the district attorney general never requested the court to admit the tape into evidence, that the action of the court in allowing the tape to be played to the jury was error. The record shows that the defendant did not object to this alleged procedural defect at trial, and therefore he has waived appellate review of this point. *T.R.A.P.* 36(a); *State v. Sutton*, 562 S.W.2d 820 (Tenn.1978).

■ The defendant's substantive attack on the admissibility of the tape is based on the fact that portions of the tape were unintelligible. The defendant argues that because parts of the tape were garbled, the entire tape was inadmissible. We disagree. Provided that a tape recording is properly authenticated, the incompleteness of it goes only to its weight and not to its admissibility. *State v. Lee*, 618 S.W.2d 320 (Tenn.Cr.App.1981); *Aldridge v. State*, 562 S.W.2d 216 (Tenn.Cr.App.1977). The tape in this case was properly authenticated by Detective Kidd. Thus, we find no error with respect to either complaint which the defendant raises about the admission of this tape recording into evidence.

The defendant next contends that the trial court erred in refusing to instruct the jury on the law of "casual exchange."

■ A charge on "casual exchange," is required only where a "small amount" of controlled substances has been exchanged.

Also, such charge is not required where there is a design or previous plan to make the exchange. T.C.A. § 52–1432(a)(2); *State v. Helton*, 507 S.W.2d 117 (Tenn. 1974); *Loveday v. State*, 546 S.W.2d 822 (Tenn.Cr.App.1976).

■ In the present case, the trial judge correctly found that a quarter ounce of cocaine selling for five hundred twenty-five dollars ($525.00) was not a "small amount." Further, the record shows that the sales involved in this case were planned in advance. Thus, the inference mentioned in T.C.A. § 52–1432(a)(2) was not applicable to the present case and no charge on this subject was required.[1]

Another complaint by the defendant is that the trial court should have given an instruction to the jury on the law regarding an absent material witness.

The defendant claims that one Dillon White should have been called by the State as a witness. The State's evidence showed that White owned the apartment where Agent Johnson stayed during the undercover operation, and other than this, White had no connection with the defendant's case. Kathy Hill testified that White had threatened her if she did not cooperate with the authorities in "setting-up" the defendant, and that he also made threats against her to try to keep her from talking to the defendant's attorney. White was a friend of Detective Kidd's, but his official status is left unclear in the record. In answer to the defendant's question as to whether White was a "field deputy," Detective Kidd said, "I presume he is. I don't know."

■ At any rate, White was not present at the trial because neither party had subpoenaed him. Obviously, since the State's theory was that White knew nothing about the case against the defendant, the State had no reason to subpoena him. There is nothing in the record to show that White was available to the State to the exclusion of the defendant, nor do we find that he

1. We note that the trial judge did charge the jury on the offense of simple possession of a controlled substance.

had "peculiar knowledge" of facts essential to the State's contention that would have warranted an absent material witness charge. *Jones v. State*, 598 S.W.2d 209 (Tenn.1980); *Couch v. State*, 4 Tenn.Cr. App. 63, 467 S.W.2d 835 (1971). We find no error.

Next, the defendant complains that cocaine is improperly classified as a Schedule II controlled substance. We disagree.

The legislature has classified cocaine as a Schedule II controlled substance, T.C.A. § 52–1415(a)(4), and T.C.A. § 52–1414 establishes the following criteria for a Schedule II controlled substance:

(1) The substance has high potential for abuse;

(2) The substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and

(3) The abuse of the substance may lead to severe psychic or physical dependence.

■ Unquestionably, cocaine meets the first two (2) criteria, and since the defendant's own medical expert conceded that cocaine can cause some psychological addiction, it also falls within the third criterion.

Finally, the defendant contends that the trial judge erred in denying his counsel's motion to interview the jurors after the trial. The defense attorneys had heard rumors that certain dissenting jurors had changed their votes in order to avoid spending the night in a motel, and further insisted that due to the illness of one juror, she was unable to properly deliberate.

■ The record shows that when the jury returned its verdict, the jury was individually polled and each juror affirmed that the verdict as reported was his or her individual verdict. Also, at the time the defendant's motion was heard, the trial judge commented that he observed and spoke with the ill juror, and determined that after a short rest, she was in "robust health."

■ Further, before a jury's verdict may be vitiated, it must be shown that some outside influence or some extraneous prejudicial information was improperly brought to bear upon one or more of the jurors, and since the defendant's allegations did not touch upon these subject matters, then it would have been improper for any of the jurors to testify upon inquiry into the validity of the jury's verdict. *Montgomery v. State*, 556 S.W.2d 559 (Tenn.Cr.App. 1977).

We hold that the trial court properly refused the defendant's request to interrogate the jurors regarding their deliberations.

We find no reversible error in this record and the judgments are affirmed.

O'BRIEN and DAUGHTREY, JJ., concur.

