# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. ROBERT G. BEAN

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-76-400     Timothy L. Easter, Judge**

---

**No. M2000-02797-CCA-R3-CD - Filed September 18, 2001**

---

The appellant, Robert G. Bean, challenges his conviction in the Williamson County Circuit Court of one count of driving under the influence of an intoxicant (DUI), third offense.  He presents the following issues for our determination: (1) whether the trial court erred in denying the appellant's challenge for cause of prospective juror Thelma Woodard; (2) whether the trial court erred in denying the appellant's motion to suppress the State's use at trial of the videotape of the traffic stop of the appellant's vehicle; (3) whether the trial court erred in refusing to instruct the jury on adult driving while impaired as a lesser-included offense of driving under the influence; and (4) whether the trial court erred in using the appellant's 1996 conviction of DUI to enhance the appellant's sentence.  Following a thorough review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Lee Ofman, Franklin, Tennessee, for the appellant, Robert G. Bean.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Lee Dryer and Derek Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In the early morning hours of January 14, 2000, Trooper Richard Cash of the Tennessee State Highway Patrol was seated in his patrol car on the shoulder of Interstate Highway 65 in Williamson County and observed the appellant drive past in an erratic manner.  In particular, Cash noted that, although the appellant was driving his vehicle below the posted speed limit, he crossed two lanes of traffic and veered into the emergency lane before returning to a center lane.

Cash proceeded to follow the appellant for several minutes, activating video recording equipment in his patrol car. The appellant continued to swerve over the lines demarcating his lane. Accordingly, Cash activated his emergency lights. The appellant did not respond, however, forcing Cash to employ his siren. At this point, the appellant stopped his vehicle on the shoulder of the highway.

When Cash approached the appellant's vehicle on foot, he noticed a strong odor of alcohol emanating from the vehicle. The trooper requested the appellant's driver's license, and the appellant fumbled for his wallet for some time, prompting the trooper to ask the appellant to get out of his vehicle. Despite the trooper's request, the appellant continued his efforts to retrieve his wallet. Accordingly, Cash himself opened the driver's door. When the appellant emerged from his vehicle, Cash noted that the appellant's movements were slow and deliberate, and the appellant appeared to have difficulty maintaining his balance. Additionally, Cash observed that the appellant's eyes were bloodshot, and his speech was slurred. Cash administered the "walk and turn" and "one-legged stand" field sobriety tests, both of which tests the appellant performed "very, very" poorly.

Following his administration of the field sobriety tests, Cash placed the appellant under arrest. Pursuant to Tenn. Code Ann. § 55-10-406 (1998), Cash then requested the appellant's permission to test his blood alcohol content, advising the appellant of the potential consequences of his refusal. The appellant refused to submit to any test, and Cash transported the appellant to the Williamson County Jail.

On April 10, 2000, a Williamson County Grand Jury returned a two-count presentment charging the appellant as a repeat offender with driving under the influence. The appellant's case proceeded to trial on September 6, 2000. In the first phase of the bifurcated proceeding, a jury found the appellant guilty of DUI. In the second phase, the appellant waived his right to a jury, and the trial court determined that the appellant had been convicted on two prior occasions of DUI. Specifically, the trial court found that on September 27, 1995, the appellant was convicted of DUI in the Williamson County General Sessions Court, and on March 27, 1996, the appellant was convicted of DUI, second offense, in the Davidson County General Sessions Court. In accordance with its findings and following a sentencing hearing, the trial court imposed a sentence of eleven months and twenty-nine days in the Williamson County Jail, suspending all but 160 days of the sentence and placing the appellant on probation.

## II. Analysis
### A.      Challenge for Cause of Prospective Juror Thelma Woodard

In this appeal, the appellant first contends that the trial court erred in denying his challenge for cause of prospective juror Thelma Woodard. With respect to this issue, the record reflects that, during the voir dire of prospective jurors, Woodard communicated to defense counsel her belief that the appellant was probably guilty. Seeking clarification, the trial court explained to Woodard the presumption of innocence accorded an accused in a criminal trial and inquired if Woodard could accord the appellant the presumption. Woodard responded, "I can try." Subsequently, however, she stated her belief that a state trooper would not arrest someone without

cause and would not testify under oath falsely. Moreover, when defense counsel asked the prospective jurors to raise their hands if they could accord his client the presumption of innocence, Woodard declined to raise her hand. Consequently, the trial court again addressed Woodard, asking her if she could set aside her beliefs if he so instructed her. She replied, "I can." On the basis of her reply, the trial court denied the appellant's ensuing challenge of Woodard for cause, forcing the appellant to use a peremptory challenge to exclude Woodard from the jury. The appellant noted to the trial court, and now contends on appeal, that he otherwise exhausted his peremptory challenges and was therefore unable to exclude juror Beverly Hytken.

Both Article I, Section 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution guarantee an accused in a criminal prosecution the right to a trial by an impartial jury. Consistent with these constitutional guarantees, Tenn. Code Ann. § 22-1-106 (1994) provides that a trial court may dismiss a juror if "a state of mind exists on the juror's part toward law enforcement or which will prevent the juror from acting impartially." See also Tenn. R. Crim. P. 24(b). The process of voir dire allows not only the trial court but also the parties an opportunity to ensure that "jurors are competent, unbiased, and impartial." State v. Howell, 868 S.W.2d 238, 247 (Tenn. 1993). In particular, "[t]he right of challenge for cause was designed to exclude from the jury triers whose bias or prejudice rendered them unfit, and peremptory challenge was intended to exclude those suspected of bias or prejudice." Manning v. State, 292 S.W. 451, 455 (Tenn. 1927); see also State v. Letivias Prince, No. M1998-00005-CCA-R3-CD, 2000 WL 1133572, at *3 (Tenn. Crim. App. at Nashville, August 10, 2000), perm. to appeal denied, (Tenn. 2001).

In assessing a juror's impartiality following a challenge for cause, the trial court should inquire "whether the juror's views would 'prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath.'" Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 852 (1985)); see also State v. Harold W. Humphreys, No. M2001-00333-CCA-R3-CD, 2001 WL 844400, at *10 (Tenn. Crim. App. at Nashville, July 26, 2001)(applying in a non-capital case the standard articulated by the United States Supreme Court for determining when a juror in a capital case may be excused due to her views on capital punishment); State v. Billy Gene DeBow, Sr., No. M1999-02678-CCA-R3-CD, 2000 WL 1137465, at *9 (Tenn. Crim. App. at Nashville, August 2, 2000), perm. to appeal denied, (Tenn. 2001)(applying the standard articulated in Witt in a non-capital case). Thus, when a prospective juror expresses disagreement with the law, "it should be determined that the juror cannot or will not follow the law (regardless of disagreement with it) before he or she is disqualified." Brazelton v. State, 550 S.W.2d 7, 10 (Tenn. Crim. App. 1974); see also State v. Taylor, 771 S.W.2d 387, 400 (Tenn. 1989). Similarly, "[e]ven the formation of an opinion on the merits will not disqualify a juror if she can lay aside her opinion and render a verdict based on the evidence presented in court." Humphreys, No. M2001-00333-CCA-R3-CD, 2001 WL 844400, at *10; see also Prince, No. M1998-00005-CCA-R3-CD, 2000 WL 1133572, at *4; Tenn. R. Crim. P. 24, Advisory Commission Comments. However, the rehabilitation of a prospective juror who has formed an opinion on the merits "should only be allowed with great care." Cooper v. State, 847 S.W.2d 521, 535 (Tenn. Crim. App. 1992).

A determination of the qualifications of a juror rests within the discretion of the trial court and will not be overturned absent a showing of an abuse of that discretion.  State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989).  Indeed, our supreme court has observed that a trial court's finding of impartiality may be overturned only for "'manifest error.'"  Howell, 868 S.W.2d at 248.  The court has explained: "The trial court's findings on this issue are entitled to a presumption of correctness since they involve a determination of demeanor and credibility, and the burden rests on the defendant to establish by clear and convincing evidence that the trial court's determinations were erroneous."  State v. Smith, 993 S.W.2d 6, 29 (Tenn. 1999); State v. Harris, 839 S.W.2d 54, 64 (Tenn. 1992); DeBow, No. M1999-02678-CCA-R3-CD, 2000 WL 1137465, at *9.

We acknowledge that the trial court's rehabilitation of Woodard in this case was somewhat summary in light of the prospective juror's prior expressions of unwillingness to accord the appellant a presumption of innocence and her corresponding admission to a lack of impartiality.  Cf. State v. Irick, 762 S.W.2d 121, 125 (Tenn. 1988).  The difficulty faced by the appellant in this appeal, however, is that any error by the trial court in failing to exclude Woodard from the jury for cause is harmless unless the jury who heard the case was not fair and impartial.  State v. Middlebrooks, 840 S.W.2d 317, 329 (Tenn. 1992); State v. Thompson, 768 S.W.2d 239, 246 (Tenn. 1989).  In other words,

> a defendant who disagrees with a trial court's ruling on for cause challenges must, in order to preserve the claim that the ruling deprived him of a fair trial, exercise peremptory challenges to remove the jurors.  Even then, however, the failure to correctly exclude a juror for cause is grounds for reversal only if the defendant exhausts all of his peremptory challenges *and an incompetent juror is forced upon him.*

Howell, 868 S.W.2d at 248 (emphasis added); see also Middlebrooks, 840 S.W.2d at 329;  State v. Gregory Lynn Redden, No. M2000-00988-CCA-R3-CD, 2000 WL 1879141, at *3 (Tenn. Crim. App. at Nashville, December 28, 2000), perm. to appeal denied, (Tenn. 2001).  Again, the appellant asserts that juror Beverly Hytken was forced upon him by the trial court's failure to exclude Woodard for cause and the appellant's consequent exhaustion of his peremptory challenges.  Be that as it may, the appellant has made no effort to explain why juror Beverly Hytken was an incompetent juror, and we decline to grant him relief.  Tenn. R. App. P. 27(a)(7); Tenn. Ct. of Crim. App. Rule 10(b).  This issue is without merit.

### B.    Motion to Suppress Videotape

The appellant next contends that the trial court erred in denying his pre-trial motion to suppress the State's use at trial of the videotape of Trooper Cash's traffic stop of the appellant's vehicle.  With respect to this issue, the record reflects that the appellant filed a motion on May 30, 2000, to suppress both the videotape and any statements made by the appellant to Trooper Cash. As relevant to this appeal, the appellant asserted that the videotape lacks any audio component and, therefore, "does not give a complete picture of what transpired at the time of the [appellant's] arrest." The appellant concluded that the admission of the videotape at his trial would deny him the right to

a fair trial. Due to the appellant's motion, the trial court conducted a suppression hearing on August 7, 2000.

At the suppression hearing, the prosecutor notified the trial court that Trooper Cash had failed to honor the State's subpoena. The prosecutor largely conceded that, due to Cash's absence, he could not demonstrate the admissibility of statements made by the appellant to the trooper and, contrary to the assertion of the appellant in his brief, did ask that the court continue the hearing to another date for the purpose of securing the trooper's presence. In any event, the prosecutor asserted that the admissibility of the videotape of the traffic stop was not dependent upon Cash's presence at the suppression hearing. In support of his position, the prosecutor cited our holding in State v. Harris, 637 S.W.2d 896, 898 (Tenn. Crim. App. 1982), that, "[p]rovided that a tape recording is properly authenticated, the incompleteness of it goes only to its weight and not to its admissibility." See also State v. Roy Ray Wallace, No. E2000-00046-CCA-R3-CD, 2000 WL 1782757, *5 (Tenn. Crim. App. at Knoxville, December 6, 2000). The appellant responded that the State was required to authenticate the videotape at the suppression hearing rather than at trial. At the conclusion of the hearing, the trial court granted the appellant's motion to suppress any statements made by him to Trooper Cash but reserved its ruling on the admissibility of the videotape. Immediately prior to the appellant's trial, the court ruled that the videotape was admissible on condition of proper authentication by the State at trial.

On appeal, the appellant acknowledges our holding in Harris, 637 S.W.2d at 898, but seeks to distinguish Harris from the instant case on the sole basis that his challenge implicated his constitutional right to a fair trial and was therefore subject to Tenn. R. Crim. P. 12(b)(3). The appellant explains that, "where a constitutional violation is alleged, the defendant is required to file a Motion to Suppress, pre-trial. . . . . The burden of going forward at the suppression hearing was on the State. . . . The State failed to carry its burden." In other words, the appellant reiterates his assertion that the State was required to authenticate the videotape at the suppression hearing rather than at trial.

Preliminarily, we do not agree that the appellant was required by Tenn. R. Crim. P. 12(b)(3) to challenge the admissibility of the videotape prior to trial. In State v. Cook, 9 S.W.3d 98, 101 (Tenn. 1999), our supreme court quoted with approval the following construction of the federal counterpart to Tenn. R. Crim. P. 12(b)(3) by the United States Court of Appeals for the First Circuit:

> At least as used in 12(b), "suppress" has a rather definite and limited meaning . . . . Motions to suppress are described as "objections to evidence on the ground that it was illegally obtained", including "evidence obtained as a result of an illegal search" and "other forms of illegality such as the use of unconstitutional means to obtain a confession." Put generally, then, suppression motions concern the "application of the exclusionary rule of evidence", or matters of "'police conduct not immediately relevant to the question of guilt'" . . . .

United States v. Barletta, 644 F.2d 50, 54 (1ˢᵗ Cir. 1981)(citation omitted). Again, the appellant in this case did not allege in his motion that the police obtained the videotape illegally but only that the lack of an audio component rendered the videotape incomplete and its admission a violation of his right to a fair trial. In short, the appellant's utterance of the words "fair trial" did not transform his challenge into one that *must* be resolved prior to trial. Indeed, to the extent the Tennessee Rules of Evidence are intended "to secure the just . . . determination of proceedings," Tenn. R. Evid. 102, most evidentiary challenges can be said to implicate a defendant's right to a fair trial. Reduced to its essence, the appellant's complaint was simply an invocation of Tenn. R. Evid. 403, which rule provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury."

That having been said, Tenn. R. Crim. P. 12(b)(emphasis added) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue *may* be raised before trial by motion." Notwithstanding this provision, the trial court may, for "good cause," order that the motion be deferred for determination at the trial of the general issue. We conclude that the trial court did not abuse its discretion in the instant case in deferring the determination of the appellant's motion. Significantly, the appellant does not claim on appeal that the State failed to properly authenticate the videotape at trial. Moreover, he does not argue on appeal that, properly authenticated, the videotape posed any danger of unfair prejudice or misleading the jury. Accordingly, this issue is without merit.

### C. Motion to Instruct the Jury on Lesser-Included Offense

The appellant next alleges that the trial court erred in refusing his request that it instruct the jury on adult driving while impaired, Tenn. Code Ann. § 55-10-418 (1998), as a lesser-included offense of driving under the influence, Tenn. Code Ann. § 55-10-401 (1998). However, we are persuaded by this court's holding in Humphreys, No. M2001-00333-CCA-R3-CD, 2001 WL 844400, at **8-9, that the offense of adult driving while impaired does not satisfy the test enunciated by our supreme court in State v. Burns, 6 S.W.3d 453, 466-467 (Tenn. 1999). Accordingly, we cannot conclude that the trial court erred in refusing the appellant's request. This issue is without merit.

### D. Appellant's Status as a Three-Time Repeat Offender

Finally, the appellant challenges the trial court's reliance upon his 1996 conviction of DUI in the Davidson County General Sessions Court to enhance his sentence. The appellant notes that the State established his 1996 conviction by introducing a certified copy of the judgment of conviction and complains that the judgment does not affirmatively demonstrate his representation by counsel or his waiver of his right to counsel. The appellant proffered an identical objection in the trial court. However, the court concluded that the notation on the judgment indicating the appellant's representation by counsel at the time of his release on bond adequately established his representation at the time of his conviction.

Citing <u>Baldasar v. Illinois</u>, 446 U.S. 222, 100 S. Ct. 1585 (1980),[1] this court has held that a prior DUI conviction may not be used to enhance the punishment for a subsequent DUI conviction unless the record of the first conviction affirmatively demonstrates that the defendant was either represented by counsel or waived his right to counsel during the prior proceedings. <u>State v. O'Brien</u>, 666 S.W.2d 484, 485 (Tenn. Crim. App. 1984); <u>State v. James Todd Atkinson</u>, No. 01C01-9712-CC-00558, 1999 WL 97916, at **1-2 (Tenn. Crim. App. at Nashville, February 18, 1999). Correspondingly, our supreme court has indicated that a facially invalid judgment cannot be used to enhance punishment in a subsequent prosecution. <u>State v. McClintock</u>, 732 S.W.2d 268, 272-273 (Tenn. 1987). A judgment that does not indicate that the defendant was represented by counsel or waived his right to counsel is facially invalid. <u>State v. Whaley</u>, 982 S.W.2d 346, 348 n.3 (Tenn. Crim. App. 1997); <u>State v. Rigina Rollins Lettsome</u>, No. 01C01-9809-CC-00370, 1999 WL 618971, at *2 (Tenn. Crim. App. at Nashville, August 11, 1999).

"'[I]ndulg[ing] every intendment in favor of the validity of the [prior] judgment[],'" <u>State v. Cottrell</u>, 868 S.W.2d 673, 678 (Tenn. Crim. App. 1992), we conclude that it adequately demonstrates the appellant's representation by counsel at the time of his conviction. The judgment form designates only one location for recording the appellant's representation by counsel, and this location contains a signature. While we agree that the judgment form is poorly drafted, the appellant is not thereby entitled to relief.

### III. Conclusion
For the foregoing reasons, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

---

[1]The Supreme Court overruled <u>Baldasar</u> in <u>Nichols v. United States</u>, 511 U.S. 738, 748-749, 114 S. Ct. 1921, 1928 (1994). Nevertheless, the Court in <u>Nichols</u> reaffirmed that an uncounseled conviction cannot be used to enhance punishment for a subsequent conviction unless, under <u>Scott v. Illinois</u>, 440 U.S. 367, 99 S. Ct. 1158 (1979), no prison term was imposed for the uncounseled conviction or the defendant waived his right to counsel. <u>Nichols</u>, 511 U.S. at 748-749, 114 S. Ct. at 1928.