IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2006

## STATE OF TENNESSEE v. JERMEIL RALPH TARTER

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S48596    Jerry Scott, Judge**

---

**No. E2005-01013-CCA-R3-CD - Filed March 8, 2006**

---

The defendant, Jermeil Tarter, was convicted of one count of sale of more than .5 grams of cocaine within one thousand feet of a school, one count of delivery of more than .5 grams of cocaine within one thousand feet of a school, and one count of possession of more than .5 grams of cocaine within one thousand feet of a school. The trial court initially merged the convictions for delivery and possession of cocaine into the conviction for the sale of cocaine and then later dismissed the convictions for delivery of cocaine and possession of cocaine. The trial court imposed a Range I sentence of twenty years in the Department of Correction. In this appeal, the defendant asserts that the evidence was insufficient to support the convictions, that the trial court erred by permitting the surveillance tape to be admitted into evidence, and that the trial court erred by permitting the prosecutor to vouch for the truthfulness of the state's witnesses. The state challenges on appeal the trial court's ruling dismissing the conviction for possession of cocaine. The convictions and sentence are affirmed. The judgment of the trial court dismissing the convictions for delivery and possession of cocaine is reversed. The judgment of conviction for sale of more than .5 grams of cocaine is modified to show that the convictions for delivery of more than .5 grams of cocaine and possession of more than .5 grams of cocaine have been merged into one judgment.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed in part; Reversed in part; Modified**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Larry R. Dillow, Kingsport, Tennessee, for the appellant, Jermeil Tarter.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Joseph E. Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 14, 2003, Officer Freddie Ainsworth of the First Judicial District Drug Task Force participated in an investigation conducted by the Second Judicial District Drug Task Force. Officer Ainsworth, who was working undercover with a confidential informant, Doris Salyers, testified that he was provided $100 in marked bills and directed to a residence on Sevier Street in Kingsport. Other officers near the residence set up audio and video recording equipment. Upon their arrival at the residence, Ms. Salyers approached a white male, asked for "Cathy," and learned that she was not there. At that point, the defendant, a black male, approached them and Officer Ainsworth asked the defendant for "a buck," which he described as street slang for "a Hundred Dollars ($100.00) worth." According to the officer, the defendant then "pulled a medicine bottle out of one of his pockets and he shook out . . . four rocks." Officer Ainsworth recalled that "[t]here was still 20, 25 rocks . . . in the medicine bottle, the same color and shape as what he had put into my hand." He gave the defendant $100 and then left. The officer later gave the substances to Agent Eddie Nelson.

Afterward, Officer Ainsworth selected the defendant, a black male, from a photographic lineup, explaining that he was ninety percent certain of the identification. He stated that later, when he eventually saw the defendant in person at the preliminary hearing, he became one hundred percent certain of his identification.

Officer Cliff Ferguson of the Kingsport Police Department, who had known the defendant for approximately eight years and was familiar with his physical appearance, viewed the videotape of the transaction and identified the defendant as the individual who sold cocaine to Officer Ainsworth. Officer Ferguson also saw a digitally enhanced version of the videotape which "took some of the glare off of" the images. He expressed certainty that the defendant was the perpetrator.

Officer Eddie Nelson of the Second Judicial District Drug Task Force, who had provided Officer Ainsworth with money to make the controlled purchase, confirmed his receipt of the cocaine from Officer Ainsworth. He recalled that he placed it in a sealed envelope and mailed it to the Tennessee Bureau of Investigation Lab in Knoxville. Officer Nelson testified that at the request of the assistant district attorney, he sent the original videotape recording of the transaction to the Regional Organized Crime Information Center to have the quality enhanced.

Steven Hobbs of the Regional Organized Crime Information Center in Nashville testified that he reviewed and digitized the videotape. He stated that he reduced the gamma settings in order to remove some of the glare. Hobbs explained that he used a video editing system to isolate certain frames of the video and create photographs.

Officer Bryan Bishop, Director of the Second Judicial District Drug Task Force, who supervised the investigation, testified that he operated the surveillance equipment during the transaction. He explained that he made no attempt to recover the "buy" money because he did not want to compromise the "ongoing investigation."

Celeste White, a forensic chemist with the Tennessee Bureau of Investigation, testified that she received the package containing the rocks collected by Officer Nelson, weighed the substance, and then used an ultraviolet spectrophotometer and an infrared spectrophotometer to determine its chemical composition. Testing established that the substance was cocaine base and weighed .54 grams.

Tyler Fleming, Director of Student Services for Kingsport City Schools, testified that at the time of the offenses, the New Horizon School, which housed an alternative school program and several other programs, was located at 520 Myrtle Street. Jake White, an employee of the City of Kingsport Geographic Information System Division, compiled a map which showed the New Horizon School and shaded a one-thousand-foot buffer zone around the school. The map established that the residence on Sevier Street was within one thousand feet of the New Horizon School. White testified that the distance from the center of the New Horizon School building to the residence on Sevier Street was 905 feet.

Doris Ann Salyers, who was called as a witness for the defense, testified that she was unable to identify the individual who sold the drugs to Officer Ainsworth. It was her recollection that the perpetrator was a black male wearing a hooded sweatshirt. During cross-examination by the state, Ms. Salyers acknowledged that she had medical problems which affected her memory and her ability to identify people, including her own family members.

I

The defendant asserts that the evidence is insufficient to support the convictions. He specifically contends that the state failed to establish his identity as the perpetrator beyond a reasonable doubt. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Identity, of course, is an indispensable element. See White v. State, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975). Our law provides that identification of the perpetrator of a crime may be accomplished by either direct or circumstantial evidence, or both. State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975). The determination of identity is a question of fact for the jury after

consideration of all competent evidence. See Biggers v. State, 411 S.W.2d 696, 697 (Tenn. 1967); Sanders v. State, 281 S.W. 924, 924 (Tenn. 1925); State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

At the time of the offenses, Tennessee Code Annotated section 39-17-417 provided as follows:

> (a)  It is an offense for a defendant to knowingly:
> (1)  Manufacture a controlled substance;
> (2)  Deliver a controlled substance;
> (3)  Sell a controlled substance; or
> (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.
> . . . .
> (c)  A violation of subsection (a) with respect to:
> (1)  Cocaine is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine and, in addition thereto, may be fined not more than one hundred thousand dollars ($ 100,000) . . . .

Tenn. Code Ann. § 39-17-417(a), (c) (2003). Tennessee Code Annotated section 39-17-432 provides that a "violation of § 39-17-417 . . . that occurs . . . within one thousand feet (1000') of the real property that comprises a public or private elementary school, middle school or secondary school shall be punished one (1) classification higher than is provided in § 39-17-417." Tenn. Code Ann. § 39-17-432(b) (2003).

The evidence adduced at trial established that Officer Ainsworth and Ms. Salyers went to a residence on Sevier Street for the purpose of making a controlled purchase of cocaine. While at the residence, they were approached by a black male who asked if he could be of assistance. Ms. Salyers and Officer Ainsworth indicated to the individual that they wanted to purchase $100 worth of cocaine. The individual then removed a medicine bottle from his pocket, shook four pieces of a rock-like substance into Officer Ainsworth's hand, and accepted $100 in cash. Later, Officer Ainsworth identified the defendant from a photographic lineup. While Officer Ainsworth conceded that he was only ninety percent sure of the identification when he viewed the photographic array, he testified that upon seeing the defendant at the preliminary hearing he became one hundred percent positive that the defendant was the perpetrator. Officer Ferguson, who had known the defendant for some eight years, testified that he observed the videotape of the transaction and recognized the defendant as the perpetrator. Testing established that the substance provided to Officer Ainsworth was .54 grams of cocaine base. The jury accredited the testimony of the state's witnesses, as was its prerogative. See State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). In our view, the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that the defendant committed the crimes.

II

The defendant next asserts that the trial court erred by denying his motion to suppress the videotape of the drug transaction. He contends that the quality of both the original videotape and the enhanced version is so poor that the trial court should not have admitted them into evidence. In response, the state submits that the defendant has waived this issue by failing to include a copy of the hearing on the motion to suppress in the record on appeal. In the alternative, the state asserts that the trial court did not err by admitting the videotape.

Initially, the defendant has failed to include a transcript of the hearing on the motion to suppress. It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The failure to prepare an adequate record for review of an issue results in a waiver of that issue. Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). Furthermore, the defendant failed to present this issue in his motion for a new trial. It is well-established that an appellate court may not consider issues not raised in a motion for new trial unless they would result in dismissal of the case. See Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Moreover, the record establishes that the defendant did not, in fact, raise the issue of the quality of the videotape in his motion to suppress. Finally, the defendant not only failed to object to the admission of the videotape at trial but confirmed that he had no objection to the admission of either the original videotape or enhanced version. In consequence, the defendant would not be entitled to relief on this issue. Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Had the defendant preserved the issue for our review, however, he would not be entitled to relief. The content of the videotape of the transaction is obviously relevant. In addition, the probative value of this evidence substantially outweighs the danger of unfair prejudice. There was no objection to the authenticity of the videotape. That portions of the videotape might have been affected by the glare of the sun does not affect its admissibility. "Provided that a tape recording is properly authenticated, the incompleteness of it goes only to its weight and not to its admissibility." State v. Harris, 637 S.W.2d 896, 898 (Tenn. Crim. App. 1982); see also State v. Beasley, 699 S.W.2d 565, 569 (Tenn. Crim. App. 1985); Aldridge v. State, 562 S.W.2d 216, 218 (Tenn. Crim. App. 1977). The trial court did not err by admitting the videotape into evidence.

### III

Finally, the defendant asserts that the trial court erred by permitting the prosecutor to vouch for the truthfulness of the state's witnesses during his closing argument. The state submits that the prosecutor's statements were not improper.

Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper argument. Sparks v. State, 563 S.W.2d 564, 567 (Tenn. Crim. App. 1978). Generally speaking, closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). To merit a new trial, however, the argument must be so inflammatory or improper as to affect the verdict. Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). In Judge v. State, this court articulated the factors to be considered in making that determination:

> (1) the conduct complained of viewed in the context and the light of the facts and circumstances of the case;
> (2) the curative measures undertaken by the court and the prosecution;
> (3) the intent of the prosecutor in making the improper statements;
> (4) the cumulative effect of the improper conduct and any other errors in the record; and
> (5) the relative strength or weakness of the case.

539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

Most restrictions during final argument are placed upon the state. That is based in great measure upon the role of the prosecutor in the criminal justice system:

> [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> It is fair to say that the average jury, in a greater or lesser degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935); see also Judge, 539 S.W.2d at 344-45. Thus, the state must refrain from argument designed to inflame the jury and should restrict its commentary to matters in evidence or issues at trial. The prosecutor must not express a personal belief or opinion, but whether that qualifies as misconduct often depends upon the specific terminology used. For

example, argument predicated by the words "I think" or "I submit" does not necessarily indicate an expression of personal opinion. United States v. Stulga, 584 F.2d 142, 147 (6th Cir. 1978). The prosecution is not permitted to reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial. See Dupree v. State, 410 S.W.2d 890, 891-92 (Tenn. 1967); Moore v. State, 17 S.W. 30, 35 (Tenn. 1929); Watkins v. State, 203 S.W. 344, 346 (Tenn. 1918); McCracken v. State, 489 S.W.2d 48, 50 (Tenn. Crim. App. 1972). Although there may be no commentary on the consequences of an acquittal, the prosecution may point out the gravity of a particular crime and emphasize the importance of law enforcement. See State v. Dakin, 614 S.W.2d 812, 815 (Tenn. Crim. App. 1980); Bowling v. State, 458 S.W.2d 639, 641 (Tenn. Crim. App. 1970).

This court has observed that there are five generally recognized areas of prosecutorial misconduct related to closing argument:

> 1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
> 2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
> 3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
> 4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.
> 5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citations omitted).

During his closing argument, the prosecutor made the following remarks concerning Officer Ainsworth's testimony:

> He selected the [d]efendant's photograph, but he said, "I'm ninety percent sure." This isn't a man that's just going to be careless with the facts and just say, "Okay, I know what the team line is. The time line is this is a man that did it, so I jump on board and even though I'm ninety percent, I just jump on board." No. He said, "No, I was ninety percent at that point in time." Agent Ainsworth, did anybody pressure you to say you were a hundred percent? "Nobody ever pressured me.["] Mr. Ainsworth, did you have an opportunity to see the [d]efendant in person again? Yes, I did. What at point in time? ["]I was a hundred percent certain this is the guy." Yesterday in [c]ourt, "Are you a hundred percent certain now?" "I am a hundred percent certain this is the guy." Any doubt in your mind? "No, sir. No doubt in my mind." That's

the testimony of somebody as he told you, that, "Yes, I want to see convictions. I want to identify people that are selling drugs," but he also said, "but I also . . . my focus or why I'm here is to tell you the truth," and he told you the truth. This is the person that sold him cocaine. . . .

At that point, defense counsel objected to the remarks as improper vouching. The trial court overruled the objection.

In our view, the prosecutor's statement that Officer Ainsworth told the truth amounted to improper vouching. Expressions of personal opinion by the prosecutor are generally prohibited as a form of unsworn, unchecked testimony which tends to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the advocated cause. See Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978). When considered in the context of the entire final argument, which was generally temperate and otherwise appropriate, however, it does not appear that the comment, which was isolated, had any effect on the jury's verdict. Thus, any error would qualify as harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

IV

The state has also raised a claim on appeal. It submits that the trial court erred by dismissing the conviction for possession of more than .5 grams of cocaine. The state contends that the conviction for possession of cocaine related to the pieces of crack cocaine that Officer Ainsworth observed inside the medicine bottle rather than the cocaine sold to Officer Ainsworth. The state does not challenge the dismissal of the conviction for delivery of more than .5 grams of cocaine. The defendant has not addressed the issue.

The record establishes that at the sentencing hearing, the trial court merged the convictions for delivery of cocaine and possession of cocaine into the conviction for sale of cocaine over the state's objection. The state challenged the trial court's ruling at the hearing on the motion for a new trial and the trial court ruled that the delivery and possession convictions should be dismissed rather than merged:

The only cocaine that we have here is the cocaine that was actually sold. That's the only quantity of cocaine that was sold, and I held that all these offenses would be merged into the sale of cocaine charge.

State of Tennessee v. William F. Cartwright, 2004, Tenn. Crim. Appeals, Lexis 427, holds that just merging is not sufficient; that, actually, I need to just enter one Judgment of Conviction for the sale, so not only must the [s]tate's [m]otion be over-ruled, the [c]ourt sua sponte is actually going to dismiss . . . the count charging delivery of a half . . . gram of cocaine within a thousand (1,000) feet of a school, and the charge of possession of more than five-tenths of a gram of cocaine within a thousand (1,000) feet of a school, and leave the only conviction being the conviction

-8-

for the sale of five-tenths of a gram of cocaine within one thousand (1,000) feet of a school, as dictated by State v. William F. Cartwright . . . . I think that's . . . the law by which I'm bound in this case, and there's not any question, but there can be only one conviction. It's more than merger. It's just the fact that the other two convictions are dismissed; it's sua sponte, and the [s]tate's [m]otion is over-ruled.

Citing State v. Jose D. Holmes, No. 02C01-9411-CR-00251 (Tenn. Crim. App., at Jackson, Nov. 22, 1995), the state contends that a dismissal of the possession count was improper because the possession count related to the additional crack cocaine in the medicine bottle. In Holmes, the defendant was arrested during an undercover drug buy in Memphis. The defendant initially delivered two rocks of crack cocaine to an undercover detective who was waiting in a nearby car. Holmes was then apprehended after a brief chase. After Holmes's arrest, officers searched his car and discovered an additional bag containing what was later determined to be crack cocaine. This court ruled that separate convictions for sale of cocaine and possession of cocaine did not violate double jeopardy principles because "[t]wo separate offenses occurred, involving two distinct quantities of cocaine." Holmes, slip op. at 7. In our view, this case is distinguishable from Holmes. In Holmes, there was sufficient proof to establish that the defendant sold an amount of a substance that tested positive for cocaine and possessed a separate amount of a substance that tested positive for cocaine. In this case, however, the only proof that the defendant may have possessed an amount of cocaine in addition to that sold to Officer Ainsworth was the testimony that there were other "rocks" in the defendant's medicine bottle. There was no proof to establish the weight of the additional "rocks" or that they, in fact, contained cocaine. The proof in this case is simply insufficient to support separate convictions for sale and possession of more than .5 grams of cocaine. If, as the state contends, the conviction for possession of cocaine is based upon the cocaine in the medicine bottle, that conviction should be reversed and dismissed. In our view, however, the record does not support the state's assertion. The trial court concluded that "the only cocaine that we have is the cocaine that was actually sold." The record supports this conclusion. Because the conviction for possession of cocaine conviction relates to the same cocaine as the conviction for sale of cocaine, separate convictions for these offenses would violate double jeopardy principles.

Although separate convictions are violative of double jeopardy principles, the trial court should not have dismissed the convictions for delivery and possession of cocaine. In State v. Addison, 973 S.W.2d 260 (Tenn. Crim. App. 1997), this court observed that dismissal is not the only remedy available when convictions violate double jeopardy principles:

Moreover, there is no need to "dismiss, vacate," or "strike," a particular "conviction" if what is meant by the term "conviction" is the return of the jury verdict of guilt. Rather, the jury verdict stands as a legitimate finding of fact and law which the trial court should preserve by merging the same offense counts into one judgment of conviction . . . .

973 S.W.2d at 267. Thus, the trial court should not have dismissed the convictions but instead should have entered a single judgment of conviction for sale of more than .5 grams of cocaine,

noting in that judgment that the convictions for delivery and possession of cocaine were merged into that offense. Although the trial court obviously intended to dismiss the convictions for delivery and possession of cocaine, the record on appeal contains separate judgments for those convictions.

Accordingly, the convictions and sentence are affirmed. The judgment of the trial court dismissing the convictions for delivery of more than .5 grams of cocaine and possession of more than .5 grams of cocaine is reversed. The judgment of conviction for the sale of more than .5 grams of cocaine is modified to show that the convictions for delivery and possession of cocaine have been merged into that offense.

_____
GARY R. WADE, PRESIDING JUDGE